UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANDREW MEINNERT, | Case No. 3:20-cv-255-RCJ-WGC |
| Plaintiff, | **ORDER** |
| v. | |
| STEPHEN HOLLEY, JR., *et al*., | |
| Defendants. | |

The Plaintiff, Andrew Meinnert, brought this suit alleging a single claim for breach of contract the defendants Stephen and Molly Holley. The Holleys move to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. (ECF No. 20.) Meinnert opposes the motion. (ECF No. 25.) The Court will deny the motion.

**BACKGROUND**

Meinnart, who has been a full-time resident of Incline Village, Nevada, since 2012, met Stephen Holley around 2013. They later went on a hunting trip together, with Stephen picking Meinnart up at the airport after his flight from Reno. Meinnart has had dinner at the Holley's home with both Stephen and Molly. On another occasion, Stephen and Meinnart spent time together in Napa, California. In a 2016 e-mail, Stephen stated to Meinnart, "I hope all is well in Incline Village."

///

In January 2017, Stephen and Meinnart met in Reno, Nevada, when Holley attended the annual Sheep Show representing Sixsite.[1]

In January 2018, Stephen, as president of Sixsite Gear, LLC (Sixsite), met with Meinnart and a third-party in Reno to discuss investing in Sixsite. Meinnart assisted Stephen and other Sixsite representatives to make contacts at the Sheep Show. In May 2018, Stephen contacted Meinnart seeking financing for Sixsite. Stephen and Meinnart negotiated the terms of a $500,000 secured loan from Meinnart to Sixsite. Meinnart required the personal guaranty of Stephen and Molly and that the loan be governed by Nevada law. The initial contact and all negotiations were conducted by telephone and e-mail, with Meinnart located in Nevada and Stephen in Texas.

Meinnart executed the loan agreement, titled "Nevada Secured Promissory Note" (Note) in Nevada. Stephen, acting as President of Sixsite, executed the Note on behalf of Sixsite. The Holleys signed the Note as guarantors. The Note was then delivered to Meinnart in Nevada. Meinnart then executed a wire transfer from his bank, in Nevada, to Sixsite.

In September 2018, Stephen e-mailed Meinnart to confirm where the interest payment on the Note should be sent. Meinnart replied with a physical address located in Incline Village but did not include the city or state in the e-mail.

Sixsite ultimately defaulted on the Note and the Holleys, Meinnart alleges, have breached their agreement to repay the loan on Sixsite's default.

**ANALYSIS**

A two-part test establishes whether this court has personal jurisdiction over a defendant. First, the plaintiff must show that the state's long-arm statute confers personal jurisdiction over the

---

[1] Stephen asserts, in his declaration, that he has met Meinnart in Nevada on only a single occasion in January 2020, when Stephen, as President of Sixsite, attempted to have Meinnart extend the loan for a year. However, as discussed below, for purposes of deciding this motion, the Court accepts Meinnart's properly supported proffer of evidence as true.

defendant. If so, then application of the statute must be consistent with federal due process. *FDIC v. British-American Ins. Co., Ltd.,* 828 F.2d 1439, 1441 (9th Cir. 1987); *Haisten v. Grass Valley Medical Reimbursement*, 784 F.2d 1392, 1396 (9th Cir. 1986). Nevada's long-arm statute, Nev. Rev. Stat. § 14.065, grants jurisdiction over out-of-state defendants if the cause of action arises from certain enumerated acts, including transaction of business or tortious conduct within the state. *Greenspun v. Del E. Webb Corp.,* 634 F.2d 1204, 1207 (9th Cir. 1980); *Wells Fargo & Co. v. Wells Fargo Express Company*, 556 F.2d 406, 414 (9th Cir. 1977). This statute has been construed liberally to be proscribed only by federal due process. *Levinson v. Second Judicial Dist. Court*, 742 P.2d 1024, 1025 (Nev. 1987); *Videotronics, Inc. v. Bend Electronics*, 564 F. Supp. 1471, 1474 (D. Nev. 1983). Accordingly, as the state and federal limits of jurisdiction are co-extensive, the Court must only decide whether the exercise of personal jurisdiction over the Holleys would be consistent with the requirements of due process. *Gordy v. Daily News, L.P.*, 95 F.3d 829, 831 (9th Cir. 1996); *Davis v. American Family Mut. Ins. Co.*, 861 F.2d 1159, 1161 (9th Cir. 1988).

"Traditional notions of fair play and substantial justice" require that a defendant have certain "minimum contacts" with a forum state before it may be subject to the court's jurisdiction. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Personal jurisdiction may be either "general" or "specific." *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 nn. 8–9 (1984). "For a defendant to be subject to general *in personam* jurisdiction, it must have such continuous and systematic contacts with the forum that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Reebok Intern. Ltd. v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir. 1995).

When a defendant's contacts do not invoke general jurisdiction, specific jurisdiction may nevertheless be invoked if the defendant's contacts give rise to the cause of action being asserted. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). The contacts needed for this kind of

3

jurisdiction often go by the name "purposeful availment." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). To establish that specific jurisdiction comports with due process, a plaintiff must show: (1) that the nonresident defendant purposefully availed their self of the privilege of conducting activities in the forum, invoking the benefits and protections of its laws; (2) that the claim arises out of or relates to the defendant's forum-related activities; and (3) that the exercise of jurisdiction is reasonable. *Farmers Ins. Ex. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990).

"The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford*, 141 S.Ct at 1024 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). "They must show that the defendant deliberately "reached out beyond" its home—by, for example, "exploi[ting] a market" in the forum State or entering a contractual relationship centered there." *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014). This "provides defendants with 'fair warning'—knowledge that 'a particular activity may subject [it] to the jurisdiction of a foreign sovereign.'" *Id.* (quoting *Burger King*, 471 U.S. at 472). "A defendant can thus 'structure [its] primary conduct' to lessen or avoid exposure to a given State's courts." *Id.* (quoting *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 297 (1980)).

As the defendants have challenged whether this Court has personal jurisdiction over them, it is plaintiff's burden to "make *a prima facie* showing of personal jurisdiction prior to trial and then prove jurisdiction by a preponderance of evidence at trial." *Trump v. District Court,* 109 Nev. 687, 857 P.2d 740, 743 (Nev.1993). To make this prima facie showing, a plaintiff must "introduc[e] competent evidence of essential facts which establish ... that personal jurisdiction exists." *Id.* (quoting *Abbott–Interfast v. District Court,* 107 Nev. 871, 821 P.2d 1043, 1044 (1991)). "In determining whether a *prima facie* showing has been made, the district court is not acting as a

///

fact finder. It accepts properly supported proffers of evidence by a plaintiff as true." *Id.* at 744 (citing *Boit v. Gar–Tec Products, Inc.,* 967 F.2d 671, 675 (1st Cir. 1992)).

At the outset, the Court finds that Meinnart's claim arises out of the Holleys' forum-related activity. That activity is the Holleys' agreement with Meinnart that they would guaranty the loan of Sixsite. They agreed that, if Sixsite did not repay the $500,000 it borrowed from Meinnart, the Holleys would accept Sixsite's liabilities and obligations to Meinnart under the Note, becoming personally responsible for the payment of the principal, late fees, and accrued interest to Meinnart under the terms of the Note. Meinnart's claim arises from that agreement. He alleges that Sixsite subsequently defaulted and the Holleys breached their agreement to repay the loan, late fees, and accrued interest. The activity is related to Nevada, as Meinnart is a resident of Nevada. The Holleys are guarantors for a loan Meinnart provided from his funds in Nevada that, he claims, the Holleys were required to pay to him in Nevada.

The next question is whether Meinnart has sufficiently shown, in response to the Holleys' motion to dismiss, that the Holleys did not merely enter into a Nevada-related agreement with Meinnart, but that they purposefully availed themselves of the privilege of entering into a Nevada-related agreement with Meinnart. The Court finds that Meinnart has met this burden.

As noted by the Holleys, the guaranty portion of the Promissory Note is the sole forum-related transaction between themselves and Meinnart underlying his claim. They further assert they do not have any other connection to Nevada outside of this single transaction. The guaranty portion of the Promissory Note, however, is the activity from which Meinnart's claim arises. Because Meinnart's claim directly concerns the guaranty, the Holleys' decision to enter into that single transaction can be sufficient to support personal jurisdiction upon a showing that the transaction is sufficiently centered in and directed at Nevada.

///

The Holleys note that they did not 'perform' any part of the guaranty in Nevada. Stephen declares that his entire contact with Meinnart regarding the guaranty portion of the Promissory Note "occurred by telephone or email while I was in Texas." However,

> it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Burger King*, 471 U.S. at 476. At issue is not whether Stephen or Molly physically travelled to Nevada, but whether they purposefully directed their efforts toward a Nevada resident.

Molly asserts, in her declaration, that the "only action" she took was signing her name on the last page next to the notation "Guarantor's signature," and then returning the signed document to Stephen. She states these events occurred in Dallas, Texas. Molly's declaration ignores that, as expressly stated on the Promissory Note immediately above the signatures, her signature affirmed that she had read and understood the Promissory Note. The Court must accept as true, for purposes of deciding the Holleys' motion to dismiss, that Molly understood she was signing a document entitled "Nevada Secured Promissory Note." In addition, Molly understood that the Borrower was Sixsite, with her husband Stephen acting as its president. Molly understood that the lender was Andrew Meinnart, an individual she had known for years prior to signing the Promissory Note and whom she knew resided in Nevada. Molly understood that the Promissory Note would "be governed under the laws in the State of Nevada." Molly understood that Sixsite had received from a Nevada resident, and agreed to pay back to a Nevada resident, the sum of $500,000 plus interest. She also understood that Sixsite agreed to pay the Nevada resident interest on a quarterly basis, and that the entire note would become due on January 15, 2020. She understood that, if Sixsite defaulted on its obligations, she would become personally obligated to pay the Nevada resident the entire unpaid

principal plus late fees and accrued interest. In short, the Court must accept as true that Molly did not merely sign the last page of a document, but that she, a Texas resident, made the deliberate decision to enter into a guaranty agreement centered on the obligations she would owe to a Nevada resident if Sixsite defaulted on its obligations to that same Nevada resident. Further, the Court must accept as true that Molly was aware of and understood these facts prior to signing the document and entering into the agreement. Molly had fair warning that, by entering into the guaranty agreement, she could become liable to a Nevada resident for a sum possibly exceeding $500,000 and, if she did not pay that sum, subject to the jurisdiction of Nevada. Molly had an opportunity to structure her conduct, by declining to sign the guaranty, to avoid exposure to Nevada's courts.

This same analysis applies to Stephen with the added factor that he was not only a guarantor, but he was also the President of Sixsite and was the individual who had sought out and negotiated the promissory note with Meinnart. As such, even looking solely to Stephen's conduct as a guarantor, Stephen was fully aware of additional facts, beyond the four corners of the Promissory Note, establishing that the Promissory Note and its guaranty were Nevada-centered agreements. Stephen (as a guarantor) was aware that Sixsite (through himself as President) had reached out from Texas to Meinnart, a Nevada resident, for the specific purpose of obtaining a loan from Meinnart. Stephen was aware that Meinnart required that the Promissory Note would be governed by Nevada law and that Stephen and Molley Holley would personally guaranty repayment of the loan. As with Molly, Stephen had fair warning that he could become subject to the jurisdiction of Nevada by entering into the guaranty portion of the Promissory Note. As with Molly, Stephen had an opportunity to structure his conduct to avoid exposure to Nevada's courts by declining to sign the guaranty.

Unlike *Affinity Network Inc. v. Schreck*, 129 Nev. 1093 (2013) or *Basic Food Indus., Inc. v. Eighth Jud. Dist. Ct., In & For Clark Cty.*, 94 Nev. 111 (1978), the proffered evidence before the

Court is not limited to the mere signing of a guaranty in another state by a non-resident as part of transaction unrelated to a Nevada resident that ultimately results in an obligation to a Nevada resident. Unlike those matters, the transaction underlying the guaranty is: (1) in the same document as the guaranty, (2) involves a Nevada resident, and (3) is centered in Nevada. The negotiations for both the underlying transaction and the guaranty, which were directed at Nevada, were for the purpose of engaging in a transaction with a Nevada resident. The guaranty was necessary to obtaining the loan from the Nevada resident. The Promissory Note itself was sufficient to place Stephen and Molly on notice that they were was providing a guaranty to a Nevada resident to facilitate a Nevada-centered transaction.

The Court finds, from the proffered evidence, that the exercise of jurisdiction in the District of Nevada over the Holleys is reasonable.

## CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. Proc. 12(b)(2) (ECF No. 20) is DENIED.

DATED THIS 7th day of September 2021.

Robert C. Jones
United States District Judge