**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Andrew MEINNERT,

      Plaintiff,

vs.

Stephen HOLLEY, Jr, an Individual;
Molly HOLLEY, an Individual,

      Defendants.

Case No.    3:20-cv-00255-RCJ-CSD

**ORDER**

Andrew Meinnert ("Meinnert") moves for summary judgment on his breach of contract claim against Stephen Holley and Molly Holley (collectively "Holley"). Meinnert provides the Court with ample evidence to grant summary judgment in his favor. Holley tries to find holes in the evidence that Meinnert provided, but their arguments are unpersuasive. Therefore, the Court will grant Meinnert's Motion for Summary Judgment. (ECF No. 39).

///

///

///

///

## I.   FACTUAL BACKGROUND

Meinnert agreed to loan Stephen Holley, the Chief Operating Officer of Sixsite Gear, LLC ("Sixsite"), $500,000 in exchange for a promissory note signed by Sixsite. (ECF No. 39 at 2). In addition to Sixsite's obligation to pay on the promissory note, Holley agreed to personally guarantee the loan. (*Id*. at 3). The parties discussed the terms of the loan for several months. (*Id*. at 2). Subsequently, Holley agreed to a $500,000.00 loan at a 6% interest rate for the first year and an 8% interest rate in the second year. (ECF No. 43 at 19). Holley was required to pay the loan back in six quarterly installments with no amount set for each installment. (Id.) Each installment payment would first go to the interest accrued and then to the principal itself. (*Id*.) The loan was due on January 15, 2020. (*Id*.) Any principal remaining resulted in an automatic default with the entire amount due plus a late fee. (*Id*.)

Holley signed the personal guaranty ("the Contract") on the loan that Meinnert made to Sixsite. (ECF No. 39 at 4). It is unclear whether Meinnert actually signed the Contract, but Meinnert loaned the money and acted according to the Contract's terms. (*Id*.) Sixsite made each payment on time. (ECF No. 44 at 7). However, Sixsite only paid $52,500.00 on the loan, which only paid the interest on the loan. (*Id*.) On the loan's due date, Sixsite owed $497,611.88 with no indication that it would pay the rest of the loan. (*Id*.) According to the terms of the Contract, Sixsite defaulted on the loan and was charged a late fee. (*Id*.) Meinnert tried to get Holley to pay on the loan that they guaranteed. (ECF No. 39 at 5-7). Holley failed to do so.

Shortly after the default, Sixsite filed for Chapter 7 bankruptcy and listed Meinnert as a creditor on its Official Form 206D Schedule D filing. (ECF No. 39 at 5). Sixsite listed Meinnert as a creditor with a $500,000.00 debt owed. (*Id*.) While the actual amount was much larger due to late fees, post-default interest, and unpaid principal, Sixsite did indicate that Holley shared in the debt owed. (*Id*.) The bankruptcy trustee adjudicated the claims and made a payment on the loan in

the amount of $12,764.71. (*Id.*) However, Holley failed to provide any further funds to pay off the loan.

Due to Holley's failure to pay, Meinnert brought a breach of contract claim in an effort to collect the loan that Holley personally guaranteed. (ECF No. 1). The parties engaged in discovery and Meinnert brought this Motion for Summary Judgment. (ECF No. 39). Holley argued that material issues of fact exist regarding the validity of the contract and the amount due on the contract. (ECF Nos. 43, 50). Meinnert disagreed with these characterizations of the record. (ECF No. 44). Holley moved to strike Meinnert's briefing on the mischaracterizations of the record and this Court denied the motion to strike, but allowed Holley to file a Sur-Reply. (ECF Nos. 46, 49). The Court considered all the arguments made in the briefing for the Motion for Summary Judgment and Holley's Sur-Reply. (ECF Nos. 39, 43, 44, 50).

## II.     LEGAL STANDARD

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

In determining summary judgment, a court uses a burden-shifting scheme. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by

demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). On the contrary, if the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. However, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id.* at 255. Notably, facts are only viewed in the light most favorable to the non-moving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

///

///

### III.     ANALYSIS

Meinnert is entitled to summary judgment on his claim against Holley because he provides enough evidence that a valid personal guaranty existed and Holley failed to honor it. Holley does not provide any evidence to the contrary. Holley argues that (A) the Contract is not valid and does not satisfy the statute of frauds, (B) the damages amount is unclear, and (C) Meinnert did not provide Holley with notice of default.

### A. Valid Guaranty

A valid contract existed between Meinnert and Holley. Contract law applies to personal guarantees. *First Com., LLC v. Sheldon, No*. 213CV01915RFBGWF, 2016 WL 5791542, at *4 (D. Nev. Sept. 29, 2016). "State law controls both the question of breach and construction of a contract." *In re Qintex Enterprises, Inc*., 950 F.2d 1492, 1496-97 (9th Cir. 1991). "Nevada law requires the plaintiff in a breach of contract action to show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech*., 434 F. Supp. 2d 913, 919–20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (Nev.1865)); *see also Anahuac Mgmt. v. Mazer*, No. 2:09–cv–01590–RLH–PAL, 2012 WL 1142714, at *3 (D. Nev. Apr. 3, 2012). Therefore, personal guarantees are valid only with "an offer and acceptance, meeting of the minds, and consideration." *Laguerre v. Nevada Sys. of Higher Educ*., 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011). "[T]o enforce a contract at law, the offer must be sufficiently definite or must call for such definite terms in the acceptance, that the performance required is reasonably certain." *Id*. (citation omitted). "Summary judgment is appropriate when the contract terms are clear and unambiguous, even if the parties disagree as to their meaning." *Liberty Ins. Underwriters Inc. v. Scudier*, 53 F. Supp. 3d 1308, 1314 (D. Nev. 2013).

Here, the Contract was valid under Nevada contract law. Meinnert offered to loan Holley the money, Holley provided a personal guaranty for consideration, the two parties agreed to a set

of terms (meeting of the minds), and the parties agreed to the terms. Recognizing those facts, Holley argues that the parties never truly agreed to the terms because Meinnert did not sign the Contract. (ECF Nos. 43, 50). Meinnert accepted the terms of the Contract when he performed his end of the bargain and loaned Holley $500,000.00. *See, e.g.,* Restatement (Second) of Contracts § 50 ("Acceptance by performance requires that at least part of what the offer requests be performed or tendered and includes acceptance by a performance which operates as a return promise."). Therefore, all the elements of a valid contract existed.

Holley also argues that the Contract did not satisfy the statute of frauds. Valid personal guaranty contracts must satisfy the statute of frauds with: "(1) the names of the parties; (2) the terms and conditions of the contract; (3) the interest or property affected; and (4) the consideration to be paid therefor." *Sheldon*, 2016 WL 5791542, at *4. (citation and quotation omitted). Personal guaranty contracts missing any of these essential items are invalid. *Id*.

The Contract at issue here contains all the essential terms to satisfy the statute of frauds. The names of the parties are present. (ECF No. 39 at 19) ("Andrew Meinnert [loans] $500,000.00 … Mr. and Mrs. Holley also agree to a personal guaranty for the full $500,000.00"). The terms of the contract set out the amount that Holley agreed to guarantee and the amount owed on the Contract if a default occurred. (*Id*.) ("If [Meinnert] does not receive payment on-time for any installment there shall be a late payment fee …"); (*Id*. at 20) ("If [Holley] is in default under this Note or is in default under another provision of this Note… [Meinnert] may … declare all outstanding sums owed on this Note to be immediately due and payable"). The interest and property affected is clearly set out. (*Id*. at 19-20) (Meinnert's loan and Holley's obligation to pay). The consideration is set out. (*Id*.) (Meinnert's loan). The contract satisfies the statute of frauds because the essential terms are clearly articulated.

However, Holley argues that the Contract does not satisfy the statute of frauds because it "fails to state at least one essential element with certainty" (ECF No. 50 at 6). In reality, the essential terms are present, but Holley tries to argue that the Contract does not adequately describe the amount due on each installment. Without that information, Holley argues, the Contract does not satisfy the statute of frauds. Holley continually states that "[p]ursuant to NRS 111.220, the substantial parts of the contract must be embodied in writing with such a degree of certainty so as to make clear and definite the intention of the parties without resorting to oral evidence." *Tri-Pacific Comm. Brokerage, Inc. v. Boreta*, 113 Nev. 203, 206, 931 P.2d 726, 728 (1997). As explained previously, the contract contained the substantial parts with certainty. Holley knew from the text of the Contract that they needed to pay installment payments to Meinnert or they defaulted on the loan and the amount guaranteed was due. Quibbling over the amount due on each installment doesn't change the fact that Holley knew all of the essential terms. It is simply another effort to avoid paying on a debt.

**B. Damages**

Meinnert provides enough evidence for the Court to determine the amount of damages due on the Contract.

Holley makes numerous frivolous arguments in their Sur-Reply that try to obfuscate the amount due on the Contract. (ECF No. 50). First, Holley argues that Meinnert cannot use the Contract to show the amount due because the Contract with the signature appeared too late in discovery. (*Id*.) Second, Holley alleges that Meinnert implicitly admits that the Contract does not satisfy the statute of frauds because Meinnert provides supplemental evidence to ameliorate the ambiguities in the Contract. (*Id*.) Finally, Holley believes that the conflicting terms of the contract render the amount due incomprehensible. (*Id*.) The Court explained why the Contract satisfied the

statute of frauds, so the Court will only discuss the amount due and whether Meinnert can use supplemental evidence.

1. Meinnert's Exhibits

Meinnert can use the exhibits provided in ECF No. 44 to show the amount of damages due. The exhibits show the payments that Holley made on the Contract and the amount owed after the payments. (ECF No. 44 at 20-27). Holley argues that Meinnert improperly submitted exhibits in violation of Fed. R. Civ. P. 37 because Meinnert did not provide these exhibits earlier in discovery. (ECF No. 50 at 3). Specifically, Holley argues that Meinnert was required to provide these exhibits for damage calculations. (*Id*.) Under Fed. R. Civ. P. 26, parties are required to submit all evidence that they plan on using to support their claims. Fed. R. Civ. P. 26(a)(1)(A)(ii). That evidence includes any evidence used in "computation of each category of damages claimed by the disclosing party" to show how computation is based. *Id*. Evidence not disclosed under Rule 26(a) is prohibited from use in a "a motion, at a hearing, or at a trial, unless the **failure was substantially justified or is harmless**." Fed. R. Civ. P. 37(c)(1) (emphasis added).

The exhibits that Meinnert submitted were not mandatory disclosures under Rule 26(a), but, even if they were, Meinnert was justified in disclosing them in the summary judgment briefing. *See* (ECF No. 39). "Rule 26 does not elaborate on the level of specificity required in the initial damages disclosure." *Maharaj v. California Bank & Tr.*, 288 F.R.D. 458, 463 (E.D. Cal. 2013) (citation omitted). However, "the 'computation' of damages required by Rule 26(a)(1)(C) contemplates some analysis; for instance, in a claim for lost wages, there should be some information relating to hours worked and pay rate." *Id*. Here, Meinnert provided Holley with the mandatory damages calculations as required under Rule 26(a). (ECF No. 39 at 3-6). Meinnert disclosed the amount that Holley originally owed, the amount Holley paid, the interest due on the

Contract, and the amount Holley owed after the default. (ECF No. 39). Without a doubt, Meinnert satisfied Rule 26(a).

Even if Meinnert failed under Rule 26(a), Meinnert was justified in providing them. "Rule 37 (c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179 (9th Cir.2008) (internal quotation marks omitted). "Under Rule 37, exclusion of evidence not disclosed is appropriate unless the failure to disclose was substantially justified or harmless." *Id*. Meinnert was justified in submitting the exhibits because Holley questioned the damages calculation.

As discussed in the Court's previous order, Meinnert submitted these exhibits in response to Holley's request for a calculation of the damages. (ECF No. 49 at 8) ("[Meinnert's] exhibits respond to the arguments that [Holley] included in the" summary judgment briefing); (ECF No. 43 at 14) ("If this were a high school algebra math problem, [Meinnert] would not receive a passing grade because 'he failed to show his work' in arriving at his answer"). Meinnert provided Holley with a calculation of the damages. (ECF No. 39 at 3-6). Holley then asked Meinnert to further show his work for the damages calculation. (ECF No. 43 at 14). Meinnert then provided the payment history and "show[ed] his work," in response to Holley's arguments. (*Id*.) Meinnert was justified in providing the exhibits.

    2. <u>Damages Amount</u>

Meinnert provides enough evidence to show the amount of damages that Holley owes on the contract. Holley was obligated to pay $500,000.00 at a 6% per annum interest rate for the first year and 8% until January 31, 2020. (ECF No. 43 at 19). Holley needed to pay in installments every three months on the 15th of the month starting on July 15, 2018. (*Id*.) That makes for 6 payments: October 15, 2018, January 15, 2019, April 15, 2019, July 15, 2019, October 15, 2019,

and January 15, 2020. The contract does not specify what Holley needed to pay for each installment. (*Id.*) However, late payments are not at issue in this matter, so the amount due for each installment is unnecessary. Each payment went to the interest due and any remainder was credited to the principal owed. (*Id.* at 20).

Holley paid a total of $52,500.00 on the Contract before defaulting. On October 12, 2018, Holley paid $7,500.00 on the Contract. At that time, Holley owed $500,000.00 in principal and $7,315.07 in interest, so $499,815.07 remained after Holley's payment. On January 5, 2019, Holley paid $7,500.00 on the Contract. At that time, Holley owed $499,815.07 in principal and $6,983.72 in interest, so $499,298.79 remained after Holley's payment. On April 15, 2019, Holley paid $7,500.00 on the Contract. At that time, Holley owed 499,298.79 in principal and $8,207.65 in interest, so $500,006.44 remained because Holley did not pay the amount of interest that accrued. On July 30, 2019, Holley paid $10,000.00 on the Contract. At that time, Holley owed $500,006.44 in principal and $9,148.00 in interest, so $499,154.43 remained. On October 15, 2019, Holley paid $10,000.00 on the Contract. At that time, Holley owed $499,154.43 in principal and $8,424.09 in interest, so $497,578.52 remained. On January 15, 2020, Holley paid $10,000.00 on the Contract. At that time, Holley owed $497,578.52 in principal and $10,033.36 in interest, so $497,611.88 remained 15 days before the Contract was due. Holley did not make any payments before the Contract became due. Therefore, Holley owed $497,611.88 at the moment that the Contract became due.

Once the Contract became due, the terms governing the amount owed changed. Late payments on the loan received a 5% penalty, so any amount owed on the day that the Contract became due came with a penalty worth 5% of the amount owed. That penalty was $24,880.59, which is 5% of the amount owed at the time that the Contract became due ($497,611.88), so Holley owed $524,238.96 with the penalty and the interest that accrued from the time that the last

installment was due.[1] If any amount was owed on the Contract on the day that it became due, then Holley was in default. The amount owed once Holley was in default received "the maximum rate allowed by law," which was 5.25% at the time of default and 6.75% after July 1, 2022. (ECF No. 32 at 20); (ECF No. 44 at 7).

With the penalty and interest rates in mind, Holley owed $570,989.58 until the bankruptcy trustee paid Meinnert from Holley's bankruptcy estate. At that time, the bankruptcy trustee paid Meinnert $12,764.71, so Holley owed $558,224.87. That amount accrued interest at a 5.25% interest rate until July 1, 2022, which made the amount balloon to $550,214,05. That amount collected interest at a 6.75% interest rate until the date of this order. With interest, the amount at the date of this order is $574,308.29. That amount will collect interest at the post-judgment interest rate set under 28 U.S.C. 1961. At the time of this Order, the post-judgment interest rate is 5.12%. Accordingly, the $574,308.29 will accrue interest at a 5.12% interest rate until fully paid.

**C. Notice**

Meinnert was not required to give Holley notice that Holley failed to pay on the Contract. Holley argues that Meinnert never provided written notice that Holley defaulted on the Contract. The language of the Contract states that:

> If the Borrower is in default under this Note or is in default under another provision of this Note, and such default is not cured within the minimum allotted time by law after written notice of such default, then Lender may, at its option, declare all outstanding sums owed on this Note to be immediately due and payable.

---

[1] Holley argues that the interest rate is unclear because the contract received an 8% interest rate until January 31, 2020, but the default rate of 5.25% applied on January 15, 2020, because the contract became due on that day. However, these terms are not conflicting. The interest rate was set at 8% until January 31, 2020. On the day that Holley was in default, the maximum interest rate allowable by law was 8%, the amount that Holley agreed to. The interest rate then went down to 5.25%, the amount allowable under Nevada's Prime Interest Rate. (ECF No. 44 at 7).

(ECF No. 43 at 20). While this may be true that Meinnert never submitted the notice, the Court does not understand why the lack of notice changes Meinnert's obligation to pay. The terms of the Contract state that the loan became payable on January 15, 2020. Under section 4 of the Contract, it states "INTEREST DUE IN THE EVENT OF DEFAULT" and goes on to say that "[i]n the event the Borrower fails to pay the note in-full on the Due Date," the interest rate changes. (ECF No. 43 at 20). Accordingly, the terms that the parties agreed to recognize that default occurs when there is remaining principal on the due date, making the entire amount due regardless of notice.

Meinnert only needed to provide notice if he chose to find Holley in default anytime before the due date. The title of section 7 of the Contract is "acceleration." (ECF No. 43 at 20). The contract does not define that term, but Black's Law Dictionary defines the term as "[t]he advancing of a loan agreement's maturity date so that payment of the entire debt is due immediately. ACCELERATION, Black's Law Dictionary (11th ed. 2019). In this context, Meinnert would have accelerated the maturity date to make the entire amount due before the due date. The terms of the section also mirror an acceleration clause because it talks about curing the default within the allotted time by law. The section informs the reader that the borrower can cure the default, but, if it doesn't, then the lender can make the entire amount due.

Meinnert is entitled to summary judgment on the breach of contract action because he showed that a valid personal guaranty existed and Holley failed to perform. The clerk of the Court shall enter judgment against Holley in the amount of $574,308.29, accruing interest at a rate of 5.12%.

///

///

///

## IV.   CONCLUSION

IT IS HEREBY ORDERED that Meinnert's Motion for Summary Judgment is **GRANTED**. (ECF No. 39).

IT IS FURTHER ORDERED that the clerk of the court shall enter judgment accordingly and close this case.

IT IS SO ORDERED.

Dated this 30th day of March 2023.

_____
ROBERT C. JONES
United States District Judge